UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MICHAEL R. FANNING, as CHIEF EXECUTIVE )
OFFICER OF THE CENTRAL PENSION FUND )
OF THE INTERNATIONAL UNION OF OPERATING )
ENGINEERS AND PARTICIPATING EMPLOYERS )
4115 Chesapeake Street, N.W., )
Washington, D.C. 20016 )
)
)
                        Plaintiff, )
)
)
        v. )                          Civil Action No.
)
ABC, INC. )
77 West 66th Street )
New York, New York 10023 )
)
)
        Serve: )
        Corporation Service Company )
        Registered Agent )
        1090 Vermont Avenue, N.W. )
        Washington, D.C.  20005 )
)
                        Defendant. )

<u>COMPLAINT</u>

<u>(TO COMPEL AN AUDIT AND COLLECT CONTRIBUTIONS
DUE TO EMPLOYEE BENEFIT PLAN)</u>

<u>PARTIES</u>

1.      Plaintiff, Michael R. Fanning, is the Chief Executive Officer of the Central

Pension Fund of the International Union of Operating Engineers and Participating

Employers (hereinafter "Central Pension Fund").   The Central Pension Fund is an

employee benefit plan as that term is defined in Sections 3(1) and 3(3) of the Employee

Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1002(1) and (3).  The

Central Pension Fund is a multiemployer plan as that term is defined in Section 2(37) of

ERISA, 29 U.S.C. § 1002(37).  The Central Pension Fund is established and maintained

in accordance with its Restated Agreement and Declaration of Trust. The Central Pension Fund is administered by the Trustees at 4115 Chesapeake Street, N.W., Washington, D.C. 20016. The Plaintiff, Michael R. Fanning, C.E.O. of the Central Pension Fund is a designated fiduciary in accordance with the Central Pension Fund's Restated Agreement and Declaration of Trust and as defined in Section 3(21) of ERISA, 29 U.S.C. § 1002(1). The Central Pension Fund is funded as required by collective bargaining agreements between participating employers and local unions affiliated with the International Union of Operating Engineers.

    2.    Defendant ABC, Inc. is a corporation with its executive offices located at 77 West 66th Street, New York, New York 10023 and also its Washington News Bureau located at 1717 DeSales Street, N.W., Washington, D.C., and has at all times relevant to this action been an "employer in an industry affecting commerce" as defined in Sections 3(5), (9), (11), and (12) of ERISA, 29 U.S.C. §§ 1002(5), (9), (11) and (12), and Section 3 of the Multi-Employer Pension Plan Amendments Act of 1980, 29 U.S.C. §§ 1001a.

## JURISDICTION AND VENUE

    3.    This is an action to compel an audit and to collect any contributions due to an employee benefit plan under the terms of a restated agreement and declaration of trust and collective bargaining agreement. This Court has subject matter jurisdiction of this action under §§ 502(a)(3), (g) and 515 of ERISA, 29 U.S.C. § § 1132(a)(3), (g) and 1145.

    4.    This Court has personal jurisdiction over the Defendant pursuant to Section 502 of ERISA, 29 U.S.C. § 1132(e)(2).

5.    Venue is proper in this district pursuant to Section 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2).

## COMMON FACTS

6.    Defendant has been signatory at all relevant times to a Collective Bargaining Agreement with International Union of Operating Engineers Local No. 99, which governs the wages, benefits and terms and conditions of employment of apprentices and journeymen performing work covered by the Agreement within the jurisdiction covered by the Agreement.

7.    A true and accurate copy of the Collective Bargaining Agreement is attached to this Complaint as Exhibit A.

8.    Defendant is bound by the Restated Agreement and Declaration of Trust establishing the Central Pension Fund by the terms of the Participating Agreement for the jurisdiction covered by the Agreement.

9.    A true and accurate copy of the Participating Agreement is attached to this Complaint as Exhibit B.

10.    Pursuant to the Collective Bargaining Agreement and Participating Agreement, Defendant agreed to pay to the Central Pension Fund certain sums of money for work performed by employees covered by the Collective Bargaining Agreement.

11.    Between the period of January 2004 to December 31, 2006, Defendant has employed employees performing work under the Collective Bargaining Agreement.

12.    Pursuant to the Central Pension Fund's Restated Agreement and Declaration of Trust, an employer who fails to pay required contributions is liable for liquidated damages in the amount of 20% of the total contributions owed.

3

13.    Pursuant to the Central Pension Fund's Restated Agreement and Declaration of Trust, an employer who fails to pay required contributions is liable for interest at the rate of 9% simple interest.

14.    Pursuant to the Central Pension Fund's Restated Agreement and Declaration of Trust, an employer who fails to pay required contributions is liable for all costs, audit expenses and attorney attorneys' fees.

15.    Pursuant to the Central Pension Fund's Restated Agreement and Declaration of Trust, an employer is obligated to supply records necessary to permit the Central Pension Fund to determine if the employer is making the required payments to the Central Pension Fund.

## COUNT I

16.    Plaintiff hereby restates and incorporates by reference the allegations set forth in paragraphs 1 through 15 as if fully set forth in this Count.

17.    By correspondence dated August 9, 2007, Plaintiff requested that the Defendant submit to a routine field payroll audit.

18.    The field payroll audit was to be conducted by qualified certified public accountants, the Calibre CPA Group PLLC, 1850 K Street, N.W. Suite 1050, Washington, D.C.

19.    An audit of the Defendant's records would permit the Central Pension Fund to determine if the Defendant has complied with its obligations under the Collective Bargaining Agreement.

20.    Under the terms of the Restated Agreement and Declaration of Trust Plaintiff is entitled to conduct an audit of Defendant's payroll records.

21.     The Defendant refused to submit to an audit as requested, and instead placed restrictions and qualifications on the audit process.

22.     An audit will determine whether the Defendant properly is reporting the number of employees working under the Collective Bargaining Agreement, wages paid to the employees, and the contributions due to the Central Pension Fund.

**WHEREFORE,** Plaintiff prays judgment against Defendant as follows:

A.     For an audit of the Defendant's payroll records for the period of January 1, 2004, through and including December 31, 2006.

B.     For a Court Order requiring Defendant to submit all payroll books and records to Plaintiff for audit at its cost for the period of January 1, 2004, through and including December 31, 2006.

C.     For any and all contributions, liquidated damages, and interest owed to the Central Pension Fund which become due as a result of the audit and after the filing of this lawsuit and up to the date of judgment plus costs, interests, audit and reasonable attorneys' fees pursuant to the Restated Agreement and Declaration of Trust, Participating Agreement, and 29 U.S.C. § 1132(g).

D.     Such further relief as the Court deems appropriate.

Respectfully submitted,

Dated: January 23, 2008          By: _____

R. Richard Hopp (Bar No. 432221)
**O'DONOGHUE & O'DONOGHUE LLP**
4748 Wisconsin Avenue, N.W.
Washington, D.C. 20016
Telephone: (202) 362-0041
Facsimile: (202) 327-1200
*Attorney for the Plaintiff*

AGREEMENT made as of September 1, 2004   between Local 99-99A-99C, International Union of Operating Engineers, affiliated with the AFL-CIO, 2461 Wisconsin Avenue, N.W., Washington, D.C. 20007-1862 (hereinafter called "Union"), and ABC, Inc., 77 West 66th Street, New York, New York 10023 (hereinafter called "Company").

It is agreed by and between the parties as follows:

1.  Scope of Agreement -

(A) This Agreement applies and is limited in its application to employees covered hereunder employed by the Company at its ABC Washington News Bureau, located at 1717 DeSales Street NW, Washington, DC 20036, and assignments on ABC-owned systems at 1725 DeSales Street, during the term hereof.

(B) This Agreement covers the Stationary and Air-conditioning Engineer employed as working supervisors (Chief Engineer and Assistant Chief Engineer), Stationary and Air-conditioning Engineers and Apprentices in connection with the operation, maintenance and repair of air-conditioning systems, heating systems and fire prevention equipment, such as pumps, stand pipes, sprinkler systems, plumbing systems, portable fire extinguisher at the aforementioned premises, and energy management systems to the extent that such energy management systems work is presently performed on an exclusive basis by bargaining unit personnel.

(C) This Agreement also covers Building Maintenance Electricians/Carpenters in connection with the maintenance of electrical appliances and fixtures, including lamping, emergency power equipment, electric motors, generators, circuits and switch gear and maintenance carpentry work, excluding major installations and repairs, which are necessary for the efficient operation of the News Bureau.

(D) This Agreement also covers Building Maintenance Mechanics/ Painters in connection with painting, spackling, wallpaper hanging and furniture refinishing. The duties of Mechanics include general tradesmanship at a handyman level, and like duties.

(E) This Agreement also covers Carpenter/Building Maintenance Mechanic/Painter, who may perform any of the duties  of the Carpenter and/or Building Maintenance Mechanic/Painter classifications.

(F) There is no minimum staffing requirement for any of the above classifications and employees may be required to perform duties in another classification commensurate with their job.

(G) It is specifically understood that with regard to the maintenance and repair of electrical equipment used for television broadcasting such work shall be done by others than those employees covered by this Agreement.

2. Warranty - The Union warrants and agrees, and it is of the essence hereof, that it represents and will continue, for the period of this Agreement, to represent for collective bargaining

FILE COPY
DO NOT REMOVE

EXHIBIT

A

tabbies

purposes a majority of the "Stationary and Air-conditioning Engineers, "Building Maintenance Electricians/Carpenters" and "Building Maintenance Mechanics/Painters" employed by the Company at the ABC Washington News Bureau.

3. Recognition - The Company hereby recognizes the Union as the exclusive collective bargainingagency for all "Stationary and Air-conditioning Engineers," "Building Maintenance Electricians/Carpenters" and "Building Maintenance Mechanics/Painters" employed by the Company at the ABC Washington News Bureau, subject to the provisions of Section 9(a) of the Labor Management Relations Act of 1947.

4. (A)Union Shop - Throughout the term of this Agreement, each employee covered by this Agreement, to the extent permitted by the Labor Management Relations Act of 1947, as amended, shall be required, as a condition of his/her employment, to be a member of the Union on and after the thirtieth (30th) day following his/her employment, or effective date of this Agreement, whichever is later.

(B) Job Vacancies - The Company may hire employees from whatever source it desires, but in the case of vacancies occurring during the period of this Agreement, it will notify the Union of such vacancies and afford the Union equal opportunity to supply applicants for such vacancies.

(C) Trial Period - When hiring a new employee, the opening shall be filled by an individual who shall meet the employment requirements of the Company, and all new employees shall be hired upon a trial basis. The Company shall have the right to discharge such employees at any time within the first six (6) months of their employment or as otherwise hereinafter provided in Paragraph 16.

(D) Failure to Tender Dues and Initiation Fees - The Company, upon receipt of written notice from the Union that membership in the Union has been denied or terminated with an employee covered by this Agreement because of his/her failure to tender the periodic dues and initiation fee uniformly required as a condition of acquiring or retaining membership in the Union, shall within seven (7) days from receipt of such notice, discharge such employee, unless during such seven (7) days from receipt of notice, the employee tenders to the Union said periodic dues and initiation fee; provided, however, that the Company shall not be required to discharge any employee for non-membership in the Union (1) if it has reasonable grounds for believing that such membership was not available to the employee on the same terms and conditions generally applicable to other members; or (2) if it has reasonable grounds for believing that membership was denied or terminated for reasons other than the failure of the employee to tender the periodic dues and initiation fee uniformly required as a condition of acquiring or retaining membership in the Union.

(E) Union Dues and Initiation Fees - Union agrees that it will not impose entrance fees, dues or assessments which are discriminatory or unreasonable.

(F) No Discrimination - The Company and the Union agree to continue their practice of not discriminating against any employee or applicant because of race, color, religion, sex, age, disability, or national origin.

2

5.   <u>Admission to Premises</u> - Any officer or duly authorized representative of Union shall be admitted to the premises of the Company at any reasonable time for the purpose of determining the maintenance of wages and working conditions hereunder; provided, that such officer or representative shall exhibit satisfactory evidence of their office and authority and provided that admission to the premises of the Company shall not interfere with the Company's business. Any person so admitted shall comply with all rules and regulations of the Company while on its premises, and not more than two (2) of such persons shall be entitled to admission at the same time.

6.   <u>No Strike</u> - The Union agrees that during the period of this Agreement it will not strike against, picket, boycott or otherwise interfere with the business of the Company and that the Union will order its members to perform their obligations to the Company even though other labor organizations are on strike against the Company, unless and until the Company has violated or refused to comply with an arbitration award made pursuant to this Agreement, it being further expressly understood and agreed that no such strike, picketing, boycott or other interference shall take place pending any arbitration.

7.   (A) <u>Minimum Wages</u> - The minimum wages of employees covered by this Agreement shall be as follows:

|  | Effective 9/1/04 | Effective 9/1/05 | Effective 9/1/06 | Effective 9/1/07 | Effective 9/1/08 |
|---|---|---|---|---|---|
| Chief Engineer | $ 1477.25 | $1521.57 | $1567.22 | $1614.24 | $1670.74 |
| Asst. Chief Engineer | $ 1256.73 | $1294.43 | $1333.26 | $1373.26 | $1421.32 |
| Stationary/Air Conditioning Eng. | $ 1072.14 | $1104.30 | $1137.43 | $1171.55 | $1212.55 |
| Electrician/ Carpenter | $ 1072.14 | $1104.30 | $1137.43 | $1171.55 | $1212.55 |
| Building Maintenance Mechanic Painter | $ 950.15 | $ 978.65 | $1008.01 | $1038.25 | $1074.59 |

The Company will not reduce the wages of any employee as a direct result of making this Agreement.

(B) <u>Promotion Discretionary</u> - Advancement to the job of "Chief Operating Engineer" and "Assistant  Chief Operating Engineer" shall be discretionary with the Company and not subject to the grievance or arbitration procedure in this agreement. The Chief Operating Engineer will be assigned to stand a watch only in the case of any emergency.   The Assistant Chief Operating Engineer will perform duties and stand watches in the same manner as the Stationary and Air Conditioning Engineers.  There is no minimum staffing

3

for this classification. The positions of Chief Operating Engineer and Assistant Chief Operating Engineer are working supervisors and these employees may be assigned to perform certain non-bargaining unit functions.

C) Carpenter/Mechanic/ Painter – The Company will provide training, on–the-job or formally, as necessary, for mechanics to perform carpentry and painting duties, carpenters to perform painting and mechanic duties and painters to perform carpentry and mechanic duties. The Carpenter/Mechanic/Painters shall perform their duties as to be complementary and supportive. The Company shall not assign duties unless the employee has received adequate training.

(D) License Requirement/Promotion Decisions - The Company agrees that only a licensed Mechanic or Apprentice shall be considered for promotion to the classification of stationary and air-conditioning engineer. The Company agrees that seniority shall be the major consideration in making promotions; however, when in the opinion of the Company the individual in line for the promotion is not sufficiently qualified, the Company will so inform the Union at the time promotion is contemplated. The Union shall have the right to discuss the promotion with the Company, and ability, competence and experience shall be considered, but the Company's decision shall be final. As a condition of employment, all stationary engineers must possess a Universal CFC license.

(E) Shift Assignments – The Company agrees that seniority shall be the major factor in considering shift assignments. Any change in shift assignment of an employee shall be made with the understanding that the first thirty (30) days on the new assignment shall be considered a trial period and the employee may be removed from such assignment if in the opinion of the Company his/her job performance in the new job is unsatisfactory.

(F) Layoff and Rehiring - The Company agrees that seniority shall be the major factor in considering layoffs and rehiring, but ability, competence and experience shall also be considered. Prior to a layoff or rehiring, the Company shall discuss the matter with the Union and shall explain the reasons for its decisions in the matter. If the parties are in dispute as to the individuals to be laid off or rehired, and the matter cannot be settled by discussions between the parties, the Company shall proceed to layoff or rehire in accordance with its announced intentions and the Union may submit the matter to arbitration in accordance with Section 17 of this Agreement. The arbitration board shall not have the power to substitute its judgment for the judgment of the Company and may order a reversal of the Company's decision only on a finding that the Company had acted in bad faith, arbitrarily or capriciously.

8.    Work Schedule - The regular work week of employees hereunder shall be forty (40) hours in five (5) days. The weekly schedule, showing two (2) consecutive days off, will be posted no later than 10:00 PM on the Friday of the preceding week. The last day of one (1) week and the first day of the following week shall be considered as two (2) consecutive days off. Once posted, an employee's day off may not be changed, except in the case of illness of another employee. An employee required to work on a scheduled day off shall receive overtime pay at the rate of time and one-half for each hour worked on such day.

4

9. Overtime - In addition to wages set forth above, any employee required to work in excess of eight (8) hours in any one (1) day shall receive overtime pay at the rate of time and one-half for each such hour worked in excess of eight (8) hours per day. Once the weekly schedule is posted, schedule changes can only be made by adding work time (at overtime rates) to the previously scheduled hours.

10. Night Shift Differential - For all hours worked between the hours of 11:00 PM and 7:00 AM, an employee shall receive in addition to his/her regular compensation a sum equal to fifteen percent (15%) of his/her regular rate for all such hours worked.

11. No Pyramiding of overtime - In no case shall overtime accrue on overtime.

12. (A) Work Day - A regular employee shall not be called for less than eight (8) hours work on any one (1) day. A tour of duty starting any day and continuing into the following day shall be considered as one (1) tour of duty and attributed to the first (1st) day. Regular employees may be scheduled individually to meet the requirements of the current broadcasting schedule.

(B) Call Back - If a regular employee who has left the premises is called back for a second tour of duty in one (1) day, he/she shall be paid for a minimum of five (5) hours for such second tour at his/her overtime rate of compensation.

13. Holidays & Vacation –

(A) Holidays - News Year's Day, Memorial Day, Labor Day, Thanksgiving Day and Christmas Day shall be deemed to be holidays irrespective of the day of the week on which the holidays may fall. An employee required to work on one (1) of these holidays will receive overtime pay at the rate of time and one-half for each hour worked on such day, and in addition will receive a compensating day off within three (3) months. If one (1) of the above-named holidays falls on an employee's regular day off, he will receive another day off within three (3) months.

(B) Vacation - Vacation allowance is determined based upon length of service and is earned on a current monthly accrual basis during any calendar year.

(i) – For regular staff employees hired prior to September 1, 2000, the following shall apply. Regular staff employees hired between January 1 and June 30 of any calendar year will begin to accrue vacation time, at the rate of .833 days per month, starting with the first day following the completion of six months of continuous service. Regular staff employees hired after June 30 of any calendar year will not be eligible for vacation in that calendar year. Regular staff employees with one (1) year but less than five (5) years service credit will accrue .833 vacation days per month and earn a total of ten (10) days of vacation allowance. Regular staff employees with five (5) or more years service credit will accrue 1.25 vacation days per month and earn a total of fifteen (15) days of vacation allowance. Regular staff employees with ten (10) or more years of consecutive service will accrue 1.66 vacation days per month and earn a total of twenty (20) days of vacation allowance. Regular staff employees with twenty (20) or more years of consecutive service will accrue vacation at the rate of 1.75, 1.83, 1.91, 2.00 or 2.08 days respectively and receive one (1) additional day of

5

vacation for each year after the twentieth (20th) year of consecutive employment up to a maximum of five (5) days for twenty-five (25) years of consecutive employment.

(ii) - For regular staff employees hired on after September 1, 2000 only, the Company policy applicable to non-union employees in effect shall be applicable. As of September 1, 2000 such policy provides that with five (5) or more years service, credit will accrue 1.25 vacation days per month and such employee shall earn a total of fifteen (15) days of vacation allowance and upon fifteen (15) or more years of consecutive service will accrue 1.66 vacation days per month and earn a total of twenty (20) days of vacation allowance.

(iii) - Total vacation allowance for any given year will be rounded to the nearest whole day. Subject to the scheduling restrictions contained in Paragraph 13 D., current year vacation days may be taken before earned. Any Regular Staff employee who terminates from the Company prior to completing six (6) months of continuous service will receive no vacation pay upon termination. Regular Staff Employees with one (1) or more years of continuous employment who terminate their employment with the Company will be eligible for vacation pay earned but unused at the time of termination.

(C) Week in Lieu –

(i) – For all regular staff employees hired before or on July 1, 1997 an additional five days of vacation with pay shall be provided in lieu of five holidays other than those set forth in 13A above. Effective January 1, 1995 these five holidays for which the vacation pay will be received will be designated each year by the Company. They will be five holidays designated for the Company non-represented employees excluding the five 13A holidays set forth above. Effective January 1, 1995 these five Company designated Week in Lieu holidays replace the five holidays previously stated in the week in Lieu section of this Agreement.

A regular staff with less than one (1) year's service, shall only receive such additional week with pay if all of such holidays shall have occurred since the commencement of his/her employment and prior to the beginning of his/her vacation. A regular staff employee who leaves the Company shall be entitled to receive that portion of the additional week's vacation which accrued but was not taken at the time of termination.

(ii) - For all persons hired after July 1, 1997 in any classification this Week in Lieu benefit and this section is void. These employees will receive the Company designated holidays which will be honored pursuant to the Company non-Union staff holiday policy.

(D) Vacation Schedule - Vacations shall be given between April 1 and October 31 of any year. However, a regular staff employee may request to have his/her vacation outside the specified period, if the requested vacation will not interfere with operations

6

at the location to which he/she is assigned, and if adequate vacation coverage can be secured, the employee's request will be granted. No more than one (1) employee at a location may be on vacation outside the vacation period at any one (1) time.

(E) Personal Holidays - The Company non-represented staff Personal Holiday policy in effect and all terms and conditions of that policy will be recognized as incorporated by reference in this Agreement.

14. Pension Fund - The Company agrees to make contributions to the "Central Pension Fund of the International Union of Operating Engineers and Participating Employers" for regular staff employees covered by this Agreement at the rate of nine and seven tenths (9.7%) of base pay per week per employee.

15. Full-Time Replacements

   a.   The Company agrees that except in emergencies, each full-time replacement of a "Stationary and Air-Conditioning Engineers," "Building Maintenance Electricians/Carpenters" or "Building Maintenance Mechanics/Painters" will be by an employee who is covered by this Agreement and who is the same classification as the member he/she relieves.

   b.   Full-time replacements hired for vacation relief are eligible for the following SIGNATURE Benefits Plan options only:

      i.   Such vacation relief employees may elect SIGNATURE Medical and Life Insurance coverages, subject to the terms and conditions of said Plans, only if that replacement is hired for any vacation relief employment, which at the time of initial engagement the Company intends to be for at least three months duration.

      ii.   The Company shall not contribute to the Central Pension Fund of the International Union of Operating Engineers and Participating Employers for any compensation paid to vacation relief employees.

16. (A) Discharge - The Company may terminate the employment of any of the regular employees covered by this Agreement whenever, in the opinion of the Company, just cause exists for the termination. Such termination shall be subject to the arbitration procedures set forth in Paragraph 17 hereof.

(B) Severance Pay - An employee who is laid off shall receive one (1) week's severance pay for each year of total Company seniority up to a maximum of twenty (20) weeks' pay. This provision will not apply to an employee who resigns or who is terminated for cause. In addition, severance pay will not apply in the case of retirement. In the case of an employee who is laid off and subsequently returns to the bargaining unit, his/her seniority for the purpose of computing severance pay shall accrue only from the date of his last recall.

7

17. <u>Grievance/Arbitration</u> –

(A) In the event any dispute shall arise under this Agreement in the Building Services Department, and is presented to the Company by written grievance no later than thirty (30) days from the date of the alleged breach of the agreement or the date of the occurrence of the event which the Grievant or Union alleges constitutes a breach of the Agreement, whichever is earlier, the Company agrees that the Building Services Manager will meet with the Shop Steward and Chief Engineer in reference to any such dispute. In the event that such dispute cannot be settled, it shall be immediately certified to the office of the Union and the main office of the Company for action. In the event that those parties cannot then agree, the dispute will be certified to an arbitrator as hereinafter provided.

(B) The parties agree promptly and in good faith to endeavor to settle by negotiation any controversy between them arising out of or in respect to this Agreement, failing which such controversy may be submitted to arbitration by either party.

(C) The party initiating arbitration of the disputed matter shall notify the American Arbitration Association of the dispute (with a copy to the other party) and request the appointment of an arbitrator in accordance with the rules of the American Arbitration Association and the arbitration shall proceed in accordance with such rules. The decision of the arbitrator shall be final and binding upon both parties and shall be fully enforceable. It is understood that the arbitrator shall not have the power to amend, modify, alter or subtract from this Agreement or any provision thereof. Matters as to which the parties have provided in this Agreement for the exercise of opinion or judgment shall not be subject to arbitration. The Union and Company will each pay one-half of the Arbitrator's fee.

18. <u>Check-Off</u> - The Company will deduct from the wages of each employee who is a member of the Union a sum equal to such employee's monthly membership dues and supplementary dues to the Union, the amount of which shall be certified in writing by the Union and will remit the same to the Union on a quarterly basis, provided written authority from each such employee is received by the Company, it being understood that this provision is subject to the applicable section of the Labor Management Relations Act of 1947, as amended.

19. <u>Jury Duty</u> - A regular staff employee (other than a temporary employee or an Apprentice Engineer) with more than six (6) months, service with the Company who is required by law to serve as a juror and who presents satisfactory written evidence of a notice for jury duty, will be given the necessary time off, with pay, from his/her regular schedule for the period during which he/she serves as a juror. Should his/her required jury service go beyond a reasonable period of time (i.e., more than four (4) weeks), payment of full salary to the employee is subject to review. Such employee is expected to report to work on any day his/her jury duty hours reasonably permits.

20. <u>Apprentices</u> –

(A) The Company shall contribute to the Joint Stationary Engineers Apprentice Training Fund an amount equal to Forty Dollars ($40) per quarter for each regular position which is covered by this Agreement (excluding Apprentice Engineer positions) it staffs during such full quarter. Such contributions are to be paid quarterly by check to the Treasurer, Joint

8

Apprenticeship Trust, Local 99-99A-99C, IUOE. Contributions will be on a pro rata basis for any regular position not staffed for a full quarter.

(B) The Company's obligation to contribute to the Fund is contingent upon the Fund's qualifications under the Internal Revenue Code so as to authorize the deductibility by the Company of its contributions thereto.

(C)      (i) - If the Company elects to employ Apprentice Engineers, under the four year program the weekly wage rate shall be:

| | |
|---|---|
| 50% | of the Stationary/Air-Conditioning Engineer wage rate for the first six (6) months of Apprenticeship |
| 55% | of the Stationary/Air-Conditioning Engineer wage rate for the second six (6) months of Apprenticeship |
| 60% | of the Stationary/Air-Conditioning Engineer wage rate for the third six (6) months of Apprenticeship |
| 65% | of the Stationary/Air-Conditioning Engineer wage rate for the fourth six (6) months of Apprenticeship |
| 70% | of the Stationary/Air-Conditioning Engineer wage rate for the fifth six (6) months of Apprenticeship |
| 75% | of the Stationary/Air-Conditioning Engineer wage rate for the sixth eighteen (18) months of Apprenticeship |
| 80% | of the Stationary/Air-Conditioning Engineer wage rate for the seventh eighteen (18) months of Apprenticeship |
| 85% | of the Stationary/Air-Conditioning Engineer wage rate for the eighth eighteen (18) months of Apprenticeship |

(ii) - The Company shall not employ more than one (1) Apprentice Engineer for each five (5) or fraction thereof Journeymen Stationary/Air-Conditioning Engineers it has in regular positions.

21. Safety Shoes - The Company will reimburse each employee covered hereunder up to One Hundred and Thirty-Five Dollars ($135.00) toward the cost of safety shoes of the kind pre-approved by the Company. To be eligible for such reimbursement, the employee must show to the Company's satisfaction that the employee's safety shoes are in need of replacement and that such need of replacement is not the result of use outside of Company employment. Furthermore, in order to collect such reimbursement, the employee must present a valid dated sales receipt for such shoes along with said new safety shoes for his management supervisor's approval.

Employees will be required to wear safety shoes while on duty. Failure to comply with any one or all of the above provisions of this Paragraph will render an employee ineligible to receive any further reimbursement hereunder. Such eligibility will not be renewed until the matter is resolved to the mutual satisfaction of both the Company and the Union.

22. Safety - The Company will continue its practice of giving due regard for reasonable safety precautions in the operations to which employees under this Agreement are assigned, and will discuss with the Union safety matters which the Union believes require attention.

9

23. <u>Sick Leave</u> - Regular staff employees will be given sick leave in accordance with Company policy prevailing at the time.

24. <u>Medical/Dental/Vision Life</u> - Regular staff employees may elect to participate in the Company's SIGNATURE Benefits Plan medical, dental, vision, employee and dependent life insurances coverages, subject to the terms and conditions of the plans or any successor programs or plans. For benefits available to vacation relief employees see 15(b).

25. <u>Reimbursement Accounts</u> - Regular staff employees may also elect to participate in the SIGNATURE Benefits Plan Reimbursement Accounts for Health Care and Dependent Day Care, subject to the terms and conditions of the plans.

26. <u>Savings & Investment Plan</u> - Regular staff employees shall be given an opportunity to participate in the Company's Savings & Investment Plan in accordance with the provisions thereof.

27. <u>Long Term Disability Insurance</u> - Regular staff employees shall be given an opportunity to be covered by Long Term Disability Insurance on the same terms and conditions as other groups of employees not covered by the Company's Retirement Plan. It is understood that the full cost of such insurance will be paid by the employees who wish to be covered.

28. <u>Educational Assistance Program</u> - Regular staff employees shall be eligible to participate in the Company's Educational Assistance Program subject to the terms and conditions thereof. Any decision rendered by the Company with regard to this benefit shall be final and shall not be subject to the grievance and arbitration provisions of this Agreement.

29. <u>Maternity/Paternity Leave</u> - Regular staff employees shall be eligible for Maternity or Paternity leave of absence without pay in accordance with Company policy.

30. <u>Adoption Assistance Plan</u> - Regular Staff Employees may elect to participate in the Company's Adoption Assistance Plan, subject to the terms and conditions of the plan.

31. <u>Employee Stock Purchase Plan</u> - Regular staff employees shall be eligible for the Employee Stock Purchase Plan in accordance with the terms and conditions of such Plan.

32. <u>Management Rights</u> - The Company reserves all of the rights, powers, and authority customarily exercised by management except as otherwise specifically designated or modified by express provisions of this Agreement.

33. <u>Employee Commute Options Act</u> - The Company and the Union recognize that the Employee Commute Options Act (the "Act") may required certain Company efforts to reduce the present level of employee commutation by automobile. The Union will not oppose those Company efforts under the Act to encourage such reduction. Upon request, the Company agrees to meet with the Union to discuss any such Company efforts.

34. <u>Term of Agreement</u> - The term of this Agreement shall be for a period beginning September 1, 2004, through August 31, 2009. All other changes in working conditions from the previous agreement shall be effective as of the date of execution of this Agreement as specified herein.

INTERNATIONAL UNION OF
OPERATING ENGINEERS
LOCAL 99-99A-99C

ABC, INC.

By: _____

By: _____  10/13/04
Jeffrey Ruthizer
Vice President
Labor Relations

11

Sideletter 1 <u>Subcontracting</u>

As of September 1, 1991
Revised September 1, 1994

It is understood that with regard to major installations, repairs and projects where the exigencies of time do not permit employees of the Company to complete such work, the Company may subcontract such work to others not covered by the Collective Bargaining Agreement.

Sideletter 2 <u>Hager Classification</u>

As of September 1, 1991
Revised September 1, 1994

Effective September 1, 1991, and for the duration of his employment in the bargaining unit, Elmer Hager, Jr., currently classified as a Building Maintenance Mechanic/Painter, shall be compensated at the Stationary/Air-conditioning Engineer rate. This agreement shall apply to Mr. Hager only and is not intended to apply to a successor to Mr. Hager, should he leave the bargaining unit, or to any other employee currently on staff or hired in the future into the "Building Maintenance Mechanic/Painter" classification.

Sideletter 3 <u>Company Benefit Plans</u>

As of September 1, 1997
Revised as of September 2000

As agreed at negotiations, notwithstanding any other provisions of the Agreement:

I.    A. It is understood that Local 99-represented employees who are eligible to participate in any of the Company-sponsored benefit Plan(s) and/or Program(s) participate on the same basis as other employees of the Company who are eligible to participate in such Plan(s) or Program(s) or comparable Plan(s) or Program(s). Therefore, changes which will be made in such benefit Plan(s) and/or Program(s) which are applicable to such other employees will apply automatically to the employees covered by this Agreement who are eligible to participate in any such benefit Plan(s) and/or Program(s).

B. By way of example, but no limitation, changes in such Plan(s) and/or Program(s) may include: termination of the Plan(s) and/or Program(s); substitution of, or merger with, another Plan(s) and/or Program(s) or parts thereof; improvements; reductions and/or any other modifications in the Plan(s) and/or Programs(s); creation of a new Plan(s) and/or Program(s) which expressly substitutes in whole or in part for a previous Plan(s) and/or Program(s) or parts thereof, etc.

It is specifically recognized that the Company-sponsored benefit Plan(s) and/or Program(s) referred to in the A. above applicable to Local 99-represented employees may, in the sole discretion of the Company, be substituted in whole or in part by any other new or pre-existing plan of the Company, or parent organization of the Company, or its successor.

It is specifically understood that there shall be no obligation to bargain with the Union over any changes in such benefit Plan(s) and/or Program(s).

12

II.    It is recognized that the appeals provisions of each of the benefit Plan(s) and/or Program(s) themselves are the sole review procedure for any employee who may contest the interpretation, application or administration of the terms of a Plan and/or Program. Accordingly, it is specifically understood that the grievance and arbitration procedures of the Agreement shall not be applicable to any claim under the Plan and/or Program by an employee, or the Union concerning the interpretation, application or administration of the terms such Plan(s) and/or Program(s) to any employee or covered dependent.

Sideletter 4 <u>Wage Deferral to Pension Plan</u>                As of September 1, 1997
                                                                 Revised as of September 1, 2000

At its election, the Union may, upon sixty days written notice, prior to September 1, 2001, September 1, 2002 or September 1, 2003, by certified mail to the undersigned, direct one percent (1%) of the wage rate set forth in Section 7A of the Agreement for each regular staff employee to the Central Pension Fund of the International Union of Operating Engineers and Participating Employees. The employer's contribution, should the Union make its election, will increase to 9.7% of base pay per week instead of 8.7% of base pay per week as set forth in Section 14 of the Agreement. In the event the Union makes the election in 2001, or thereafter the wage rates will be reduced by one percent (1%) that year and all subsequent base wage increases shall be on such lower base wage rate.

Sideletter 5 <u>Off-Site Assignments</u>                        As of September 1, 2004

Regular staff employees may be assigned off-site, on a non-jurisdictional basis, at several named government facilities (e.g. White House) in connection with ABC remotes, provided that such assignments do not conflict with another union's jurisdiction over such work. Upon execution of this Agreement, regular staff employees shall receive a one-time lump sum payment of $500, applicable for up to ten assignments during the term of this agreement, and $50 per assignment thereafter. Such assignments shall also be treated as hours worked under the agreement.

**CPF**

CENTRAL PENSION FUND

**CENTRAL PENSION FUND**
**of the**
**International Union of Operating Engineers and Participating Employers**
4115 Chesapeake Street, N.W. • Washington, D.C. 20016-4665

**PARTICIPATING AGREEMENT**

(See instructions on back)

| FUND OFFICE USE | |
|---|---|
| Fund Number | 50 |
| Account Number | 104371 |
| Contract Code | |

**EMPLOYER RECORD DATA**
(To Be Completed by Employer)

(2) Employer Fed I.D. Number

(3) Serial No. Assigned to CPF

(1)  Business Name & Address (Address to which Reporting Forms should be sent)

Approximate Number of Employees to
Be Covered
Bus Phone Area Code(              )
No.

ABC, Inc.,
77 West 66th Street
New York, NY 10023-6298

Business is (check one):
☐ Joint Venture    ☐ Corporation
☐ Partnership    ☐ Proprietorship

(City)        (State)        (Zip Code)

(4) Standard Industrial Classification

The undersigned EMPLOYER and UNION are aware of the AGREEMENT AND DECLARATION OF TRUST establishing the Central Pension Fund of the International Union of Operating Engineers and Participating Employers, as currently written (hereinafter referred to as AGREEMENT) The EMPLOYER agrees to contribute to the Fund established by such AGREEMENT on the basis specified below, and that such contributions shall be made on behalf of all employees of the EMPLOYER represented by the International Union of Operating Engineers and its Local Unions The EMPLOYER further agrees to be bound by and to comply with each and every provision of the AGREEMENT, and as it may be amended The EMPLOYER further consent to the appointment of the Trustees, currently administering the Fund, as well as their duly appointed successors and specifically ratify all actions previously taken in connection with the creation and administration of the AGREEMENT

The EMPLOYER further agrees to remain bound to the AGREEMENT, and as it may be amended, during the term of the collective bargaining agreement referred to above, and all subsequent collective bargaining agreements between the EMPLOYER and the UNION, so long as such agreements contain an obligation to contribute to the Central Pension Fund. The EMPLOYER further agrees to continue contributions to the Fund during any period in which it is engaged in negotiations with the UNION, on the basis specified in its most recently expired agreement with the Union, until such time as a new agreement is reached or the EMPLOYER no longer has a duty to bargain with the UNION

The undersigned further specifically agree that in the event it is determined that the EMPLOYER is delinquent in its obligations to contribute to the Fund, the Fund will be entitled to all relief available under 29 U.S.C §1132(g)(2) and Article IV of the AGREEMENT

**BASIS OF PARTICIPATION  (To be Completed by Local Union)**

( 5)  Bargaining Agreement Effective      **September 1**      **2004**   Local No        **99**
(Date)

( 6)  Pension Contributions to Commerce Effective    **September 1**    **2004**   Rate Per Hour    **9.7%**

( 7)  Pension Contribution Payment Basis    **of base pay per week per employee**

( 8)  Pension Rate Changes During Bargaining Agreement.    Date            Rate
Date        Rate        Date        Rate

( 9)  Bargaining Agreement Expiration and / or Renewal Date    **August 31, 2009**

(10)  Jurisdiction Covered by This Agreement    **1717 DeSales Street, NW**
**Washington, DC**

(11)  Type of Contract    **Collective Bargaining Agreement**

(12)  Renewal Participation Agreement ☐*                      New Participation Agreement ☐
*If Renewal or Continuation, Indicate Account Number                      and Fund Number

Dated at    **IUOE, Local 99**        this    **15th**    day of    **September**        **2004**

Employer Signatory

(Signature)    S.VPror (Title)
Jeffrey Ruthizer (Printed or Typed)
ABC Inc. (Name of Organization)

Local Union Signatory

(Signature)    (Title)
**Michael R. Murphy, Business Manager**
(Printed or Typed)

**(FUND OFFICE USE)**
Accepted on    10/22/04    by    Michael B. Fanning

, Chief Executive Officer
For the Trustees of Central Pension Fund

Fund Copy  White;  Union Copy  Pink;  Employer Copy  Yellow

CPF - ER27



EXHIBIT
**B**

JS-44
(Rev.1/05 DC)

# CIVIL COVER SHEET

## I. (a) PLAINTIFFS

Michael R. Fanning, as CEO of the Central Pension Fund of the I.U.O.E. and Participating Employers

**DEFENDANTS**

ABC, Inc.

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____
(EXCEPT IN U.S. PLAINTIFF CASES)

D.C.

1100

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

R. Richard Hopp, O'Donoghue & O'Donoghue LLP, 4748 Wisconsin Avenue, N.W., Washington, D.C. 20016.  (202) 362-0041

Case: 1:08-cv-00136
Assigned To : Walton, Reggie B.
Assign. Date : 1/24/2008
Description: Labor-ERISA

## II. BASIS OF JURISDICTION

(PLACE an x IN ONE BOX ONLY)

O  1 U.S. Government
   Plaintiff

⊙  3 Federal Question
   (U.S. Government Not a Party)

O  2 U.S. Government
   Defendant

O  4 Diversity
   (Indicate Citizenship of
   Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | O 1 | O 1 | Incorporated or Principal Place of Business in This State | O 4 | O 4 |
| Citizen of Another State | O 2 | O 2 | Incorporated and Principal Place of Business in Another State | O 5 | O 5 |
| Citizen or Subject of a Foreign Country | O 3 | O 3 | Foreign Nation | O 6 | O 6 |

## IV.  CASE ASSIGNMENT AND NATURE OF SUIT

**(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)**

| O A. *Antitrust* | O B. *Personal Injury/ Malpractice* | O C. *Administrative Agency Review* | O D. *Temporary Restraining Order/Preliminary Injunction* |
|---|---|---|---|
| ☐ 410 Antitrust | ☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury<br>☐ 362 Medical Malpractice<br>☐ 365 Product Liability<br>☐ 368 Asbestos Product Liability | ☐ 151 Medicare Act<br><br>**Social Security:**<br>☐ 861 HIA ((1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g)<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g)<br>**Other Statutes**<br>☐ 891 Agricultural Acts<br>☐ 892 Economic Stabilization Act<br>☐ 893 Environmental Matters<br>☐ 894 Energy Allocation Act<br>☐ 890 Other Statutory Actions (If Administrative Agency is Involved) | **Any nature of suit from any category may be selected for this category of case assignment.**<br><br>*(If Antitrust, then A governs)* |

| O E. *General Civil (Other)* | **OR** | O F. *Pro Se General Civil* |
|---|---|---|

| **Real Property**<br>☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent, Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property<br><br>**Personal Property**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | **Bankruptcy**<br>☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br><br>**Prisoner Petitions**<br>☐ 535 Death Penalty<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition<br><br>**Property Rights**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 840 Trademark<br><br>**Federal Tax Suits**<br>☐ 870 Taxes (US plaintiff or defendant<br>☐ 871 IRS-Third Party 26 USC 7609 | **Forfeiture/Penalty**<br>☐ 610 Agriculture<br>☐ 620 Other Food &Drug<br>☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 630 Liquor Laws<br>☐ 640 RR & Truck<br>☐ 650 Airline Regs<br>☐ 660 Occupational Safety/Health<br>☐ 690 Other<br><br>**Other Statutes**<br>☐ 400 State Reapportionment<br>☐ 430 Banks & Banking<br>☐ 450 Commerce/ICC Rates/etc.<br>☐ 460 Deportation | ☐ 470 Racketeer Influenced & Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Satellite TV<br>☐ 810 Selective Service<br>☐ 850 Securities/Commodities/ Exchange<br>☐ 875 Customer Challenge 12 USC 3410<br>☐ 900 Appeal of fee determination under equal access to Justice<br>☐ 950 Constitutionality of State Statutes<br>☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act |

| ○ **G. Habeas Corpus/ 2255** | ○ **H. Employment Discrimination** | ○ **I. FOIA/PRIVACY ACT** | ○ **J. Student Loan** |
|---|---|---|---|
| ☐ **530 Habeas Corpus-General**<br>☐ **510 Motion/Vacate Sentence** | ☐ **442 Civil Rights-Employment** (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ **895 Freedom of Information Act**<br>☐ **890 Other Statutory Actions** (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ **152 Recovery of Defaulted Student Loans** (excluding veterans) |

| ⊚ **K. Labor/ERISA (non-employment)** | ○ **L. Other Civil Rights (non-employment)** | ○ **M. Contract** | ○ **N. Three-Judge Court** |
|---|---|---|---|
| ☐ **710 Fair Labor Standards Act**<br>☐ **720 Labor/Mgmt. Relations**<br>☐ **730 Labor/Mgmt. Reporting & Disclosure Act**<br>☐ **740 Labor Railway Act**<br>☐ **790 Other Labor Litigation**<br>☒ **791 Empl. Ret. Inc. Security Act** | ☐ **441 Voting (if not Voting Rights Act)**<br>☐ **443 Housing/Accommodations**<br>☐ **444 Welfare**<br>☐ **440 Other Civil Rights**<br>☐ **445 American w/Disabilities-Employment**<br>☐ **446 Americans w/Disabilities-Other** | ☐ **110 Insurance**<br>☐ **120 Marine**<br>☐ **130 Miller Act**<br>☐ **140 Negotiable Instrument**<br>☐ **150 Recovery of Overpayment & Enforcement of Judgment**<br>☐ **153 Recovery of Overpayment of Veteran's Benefits**<br>☐ **160 Stockholder's Suits**<br>☐ **190 Other Contracts**<br>☐ **195 Contract Product Liability**<br>☐ **196 Franchise** | ☐ **441 Civil Rights-Voting** (if Voting Rights Act) |

**V. ORIGIN**

⊚ **1 Original Proceeding**  ○ **2 Removed from State Court**  ○ **3 Remanded from Appellate Court**  ○ **4 Reinstated or Reopened**  ○ **5 Transferred from another district (specify)**  ○ **6 Multi district Litigation**  ○ **7 Appeal to District Judge from Mag. Judge**

**VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)**
To compel an audit and for any unpaid contributions pursuant to 29 U.S.C. Section 1132

| **VII. REQUESTED IN COMPLAINT** | CHECK IF THIS IS A CLASS ☐ ACTION UNDER F.R.C.P. 23 | **DEMAND $** to compel audit    Check YES only if demanded in complaint |
|---|---|---|
| | | **JURY DEMAND:**    YES ☐    NO ☒ |

**VIII. RELATED CASE(S) IF ANY**    (See instruction)    YES ☐    NO ☒    If yes, please complete related case form.

DATE  January 24, 2008    SIGNATURE OF ATTORNEY OF RECORD    _Richard Hopp_  DC# 432221

## INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.  COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.  CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.  CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.  CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.  RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.